IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ANNETTE SUTPHIN,

          Plaintiff,

v.                             CIVIL ACTION NO.   2:14-cv-01379

ETHICON, INC.,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Plaintiff's Motion to Authorize Videoconference Testimony of Dr. Omar Duenas and Dr. David Afram. [ECF No. 305]. For the reasons that follow, I **GRANT** the Motion.

### I. Background

In this Motion, Plaintiff requests authorization to present the testimony of two fact witnesses via live videoconference during the upcoming trial in this case. *See* [ECF No. 305]. In support of her Motion, Plaintiff attached an affidavit from each witness explaining the reasons for requesting authorization to appear via live videoconference. In exhibit A, Dr. Afram avers that his OBGYN practice is in Manassas, Virginia, which is a 5.3 hour drive from the trial location in Charleston, West Virginia; that it would "greatly interrupt [his] medical practice to travel that distance;" and that he has concerns about appearing in person due to COVID-19.

[ECF No. 305-2]. In exhibit B, Dr. Duenas makes the same averments except that his practice is a 2.5 hour drive from Charleston, in Morgantown, WV. [ECF No. 305-3].

In Plaintiff's supporting memorandum [ECF No. 306], she argues there is good cause for allowing contemporaneous live video testimony in accordance with Federal Rule of Civil Procedure 43(a). Specifically, Plaintiff argues that the increased risk of contracting COVID-19 during travel is good cause because Dr. Afram and Dr. Duenas would not only be risking their own health but also the safety of their patients. Plaintiff also argues that allowing this live video testimony is preferable to playing a pre-recorded trial deposition.

In its response [ECF No. 322], Defendant Ethicon, Inc. ("Ethicon") makes separate arguments with respect to each witness. With respect to Dr. Afram, Ethicon argues that, to the extent he both lives and works outside of West Virginia, the court does not have subpoena power over him under Federal Rule of Civil Procedure 45, and that an order allowing Dr. Afram to testify via live video would be an improper order compelling his presence. Alternatively, Ethicon argues that Dr. Afram is an unavailable witness and that playing his video deposition, taken closer in time to his treatment of Plaintiff, would be preferable to allowing live video testimony. With respect to Dr. Duenas, Ethicon argues the court should defer ruling on Plaintiff's Motion because, at this time, Dr. Duenas has not yet been deposed. Ethicon argues that a deferred ruling would not create a hardship for Dr. Duenas because he is within the subpoena power of the court, and he is close enough geographically that he does not need to plan for or undertake extensive travel. Finally, Ethicon argues that the

court should defer ruling on video testimony until closer to the trial so it can take into account any updated COVID-19 information and "craft a process that is fair to both parties and all witnesses whose circumstances may or may not warrant COVID-19 related accommodation." [ECF No. 322].

## II. Legal Standard

Federal Rule of Civil Procedure 43(a) provides that "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." While, typically, "remote transmission [of testimony] is to be the exception and not the rule," certain circumstances are compelling enough to permit testimony via live videoconference. *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 479 (D. Md. 2010). Though there have been concerns about the potential shortfalls of live video testimony, "advances in technology minimize these concerns. The near-instantaneous transmission of video testimony through current technology permits the jury [or, in a bench trial, the Court] to see the live witness along with his hesitation, his doubts, his variations of language, his confidence or precipitancy, [and] his calmness or consideration." *In re RCF and ResCap Liquidating Trust Action*, 444 F. Supp. 3d 967, 970 (D. Minn. 2020) (internal quotation marks omitted; alterations in original) (citation omitted).

The Advisory Committee Notes to Rule 43(a) explain, remote "[t]ransmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial." Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendment.

Instead, "[t]he most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or illness, but remains able to testify from a different place." *Id.* To be sure, the Advisory Committee Notes do prefer live, in-person testimony. However, as explained above, the advances in technology since 1996 when the Rule first allowed for live video testimony have eliminated many of the initial concerns.

Relevant here, other courts have found the COVID-19 pandemic constitutes "good cause in compelling circumstances" to allow witness testimony through live videoconference. *See In re RCF and ResCap Liquidating Trust Action*, 444 F. Supp. 3d at 971-72 (holding that the "unexpected nature, rapid spread, and potential risk" of COVID-19 established good cause); *see also Gould Elecs. Inc. v. Livingston Cty. Rd. Comm'n*, No. 17-11130, 2020 WL 3717792, at *3 (E.D. Mich. June 30, 2020) (citing *In re RFC* and holding that an entire bench trial could be properly conducted via live videoconference during COVID-19).

## III. Discussion

I **FIND** that the ongoing COVID-19 pandemic constitutes "good cause in compelling circumstances" for allowing trial testimony via live videoconference. Fed. R. Civ. P. 43(a). Though Plaintiff could have made her motion to allow live videoconference testimony earlier, I hold that the "unexpected nature, rapid spread, and potential risk" of COVID-19 is good cause. *In re RCF and ResCap Liquidating Trust Action*, 444 F. Supp. 3d at 971. To be clear, I am not granting Plaintiff's Motion because traveling to be physically present at the trial would "greatly interrupt" Drs.

Duenas and Afram's medical practices. However, I am concerned about the added risk their physical presence would create for them and their patients. In my view, any witness presenting live, in-person testimony is at an increased risk of contracting COVID-19. Further, the more people present in the courtroom, the greater the risk to the parties, counsel, the jury, and court staff. Where an acceptable alternative to in-person testimony exists and allows for the benefits of live witness examination, the COVID-19 pandemic presents perhaps the most compelling reason yet to authorize its use.

Turning to Ethicon's objections, I am not convinced by Ethicon's argument that *authorizing* video testimony is akin to an order *compelling* Dr. Afram's presence in violation of Federal Rule of Civil Procedure 45. To the extent Dr. Afram is outside the subpoena power of the court, Plaintiff must voluntarily secure his testimony either in person or via live videoconference, present his testimony via deposition, or not call him as a witness at all. I am likewise not convinced by Ethicon's argument that presenting Dr. Afram's testimony via deposition is preferable to live video testimony. As I explained above, the advances in technology make live videoconference a preferable option because the jury can "see the live witness along with his hesitation, his doubts, his variations of language, his confidence or precipitancy, [and] his calmness or consideration." *In re RCF and ResCap Liquidating Trust Action*, 444 F. Supp. 3d 967, 970 (D. Minn. 2020). In regard to Ethicon's objection that Dr. Duenas has not yet been deposed, I find no reason to delay ruling on this Motion because I

have already found that COVID-19 presents good cause in compelling circumstances to allow witnesses to testify via live videoconference.

In addition to finding good cause and compelling circumstances, I am confident that "appropriate safeguards" can be put into place to ensure the accurate identification of witnesses and to ensure accurate transmission of the contents of their testimony. Any issues with the clarity of the witnesses' testimony can be explored by counsel during the witness examination.

Further, I am placing several additional requirements for calling witnesses via live videoconference to act as appropriate safeguards for the smooth and efficient operation of this trial. In order for Plaintiff to call either Dr. Duenas or Dr. Afram as a live video witness, the Plaintiff must advise the court and opposing counsel of the live video witness the day before the witness is to be called. Counsel must also advise the court of what time of day it expects to call the live video witness, and how long it expects the direct examination of the witness to last. Opposing counsel must then advise the court of how long it anticipates to cross examine the live video witness. Further, before any witness will be permitted to appear via live videoconference, that witness, *not* a proxy for the witness, must schedule a time to test his or her audio and video connections with my deputy clerk and courthouse IT staff. I will discuss this further during the Pretrial Conference with the parties. Additionally, the witness must have a reliable internet connection and an adequate size screen to accommodate viewing any exhibits remotely. Finally, live videoconference witnesses must be available when they are called to present testimony. Given my orders regarding the

6

time constraints of this trial, I will not take a recess if either doctor is unprepared or unavailable to testify at the time they are called.

## IV. Conclusion

For the foregoing reasons, I **GRANT** Plaintiff's Motion [ECF No. 305]. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                ENTER:    September 1, 2020

                JOSEPH R. GOODWIN
                UNITED STATES DISTRICT JUDGE